2015 IL App (1st) 140948

FIRST DIVISION
April 27, 2015

No. 1-14-0948

| | | |
|---|---|---|
| CHICAGO TITLE INSURANCE COMPANY, | ) | Appeal from the |
| Individually and as Subrogee for William | ) | Circuit Court of |
| Baczek, Jan W. Baczek, and Andrea M. Baczek, | ) | Cook County |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | No. 2012 L 004198 |
| v. | ) | |
| | ) | |
| BENJAMIN J. BASS, Individually and d/b/a | ) | |
| Property Group, | ) | Honorable |
| | ) | Sanjay Tailor, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Cunningham and Connors concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Chicago Title Insurance Company (Chicago Title), appeals the order of the circuit court granting defendant Benjamin Bass's motion for summary judgment on plaintiff's complaint for breach of contract and unjust enrichment.   On appeal, Chicago Title contends the trial court erred in granting summary judgment in favor of Bass where it paid out proceeds in accordance with its title insurance policy issued to the Baczeks and thus became an assignee and subrogee for the Baczeks' claim against Bass for breach of warranty.   Alternatively, Chicago Title argues that Bass was unjustly enriched when the Baczeks gave him $65,000 and in return they received a worthless warranty deed.   For the following reasons, we affirm.

No. 1-14-0948

¶ 3     The trial court granted Bass's motion for summary judgment on March 18, 2014. Chicago Title filed its notice of appeal on March 26, 2014. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 4                                BACKGROUND

¶ 5     This appeal stems from tax proceedings conducted on property located at 522 E. Washington Street in Round Lake Park, Illinois. The property includes a commercial building. On July 6, 1984, Patricia and Richard Kelver owned the subject property as joint tenants. On November 20, 2003, the Kelvers allegedly signed an agreement to sell the Washington Street property to William and Jan Baczek for $140,000. A dispute over the sale subsequently arose and the Kelvers failed to close on the contract. Meanwhile, the Baczeks continued to claim an interest in the property. In August 2004, they recorded a "Memorandum of Sale" with Lake County. By recording this interest in the property, the Baczeks effectively created a cloud on its title. On February 25, 2005, the Baczeks filed suit against the Kelvers for specific performance of the sales contract. On April 22, 2005, the Baczeks recorded a *lis pendens* notice on the property. Richard passed away on March 30, 2005, and thereafter Patricia became sole owner of the property.

¶ 6     Prior to this dispute, the property was delinquent in paying real estate taxes in 2002. On December 1, 2003, the Lake County treasurer conducted a tax sale for the 2002 real estate taxes. Property Group, owned by Benjamin J. Bass, purchased the property's 2002 taxes. In May 2006, Property Group filed a petition for issuance of a tax deed related to the delinquent 2002 taxes it purchased. Pursuant to the litigation, the property owner and interested parties had until

September 28, 2006, to redeem Property Group's tax lien and to avoid having a tax deed issued to Bass. Both Patricia and the Baczeks received timely notice of the tax deed litigation. On August 28, 2006, the Baczeks redeemed the 2002 taxes. The Baczeks' attorney informed Patricia's attorney of the redemption, and in reliance on the action, Patricia refrained from redeeming the taxes herself. Following the redemption, Property Group filed a motion to dismiss its tax deed petition, which the trial court granted on September 21, 2006.

¶ 7    With their specific performance litigation against Patricia still pending, the Baczeks contacted Bass and expressed a desire to purchase the property through the dismissed tax deed litigation. In his affidavit, Bass stated that the parties entered into an oral contract in which the Baczeks agreed to purchase the property for $65,000. On October 20, 2006, pursuant to the agreement, Property Group filed its motion to expunge the redemption and to vacate the order dismissing the petition. The attorney for the Baczeks then filed his appearance on their behalf in the reinstated tax deed litigation. Neither Patricia nor her attorney received notice of Property Group's motion. On December 7, 2006, the trial court entered an "agreed order" expunging the August 28, 2006, redemption of the taxes on the property and issued a tax deed for the property to Bass. Bass then transferred the property to the Baczeks via warranty deed on February 13, 2007, for $65,000. On April 20, 2007, the Baczeks voluntarily nonsuited their specific performance action against the Kelvers.

¶ 8    As part of their purchase of the property, the Baczeks obtained a title insurance policy from Chicago Title for $140,000. The policy protected against loss or damage due to (1) title "being vested other than as stated" in the policy; (2) "any defect in or lien or encumbrance on the title"; (3) "unmarketability of the title"; and (4) lack of access to and from the land. However, the policy excluded from coverage "loss or damage, costs, attorneys' fees or expenses which

arise by reason of *** [d]efects, liens, encumbrances, adverse claims or other matters *** created, suffered, assumed or agreed to by the insured claimant."

¶ 9    Patricia subsequently discovered that the Baczeks acquired the property through the tax deed litigation.   Patricia filed a petition pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2006)).   In the petition, Patricia alleged that Bass procured the property by fraud or deception.   She stated that at the time of her petition, the Baczeks had listed the property for sale for $335,000.   She also argued that the Baczeks' payment of the 2002 taxes was to her benefit and, furthermore, if she had been notified of the motion to expunge the redemption, she would have redeemed the taxes herself.   Patricia requested that the trial court vacate the agreed order expunging the redemption and the order issuing the tax deed and declare as void the tax deed issued to Property Group.

¶ 10    Since the Baczeks were respondents in Patricia's section 2-1401 petition, they filed a title policy claim with Chicago Title, which accepted their claim.   On November 16, 2010, after extensive litigation, Patricia prevailed on her section 2-1401 petition.    As a result, the trial court entered an order vacating the issuance of the tax deed to Bass and revesting the property to Patricia, and also ordered Patricia to reimburse Bass and the Baczeks for real estate taxes paid on the property.   Patricia subsequently filed another claim against Bass, the Baczeks, and the Baczeks' attorney, alleging fraud, intentional interference, conspiracy, waste, and unjust enrichment.   This suit remains pending.

¶ 11    Chicago Title did not appeal the decision, but instead made a loss payment under its policy to the Baczeks for $115,000.   Chicago Title also incurred $67,379.66 in attorney fees defending the Baczeks in the action.   In return for the payment, the Baczeks executed a settlement, release and assignment of rights with Chicago Title.   The agreement provided that

Chicago Title "shall be subrogated to the Insureds for any claims against the Insureds' seller or any other potentially liable party with respect" to the matter. It also provided that the "Insureds agree to assign their rights and claims against the Sellers or any other potentially liable parties to [Chicago Title] with respect to the subject matter of this claim." Based on this agreement, Chicago Title demanded payment and reimbursement from Bass for breach of warranty and quiet enjoyment. Bass refused, and Chicago Title filed a two-count complaint against him alleging breach of warranty deed and unjust enrichment. The parties filed cross-motions for summary judgment, which were fully briefed and argued before the trial court. In defense of his motion for summary judgment, Bass argued that Chicago Title had no contractual right to subrogation where it was a voluntary payor and that Chicago Title sought damages it was not entitled to pursue. On March 18, 2014, the trial court granted Bass's motion and denied Chicago Title's motion for summary judgment. Chicago Title filed this timely appeal.

¶ 12                                    ANALYSIS

¶ 13    Chicago Title contends that the trial court erred in denying its motion for summary judgment and granting Bass's motion for summary judgment. Summary judgment is proper when the pleadings, depositions, admissions and affidavits, viewed in the light most favorable to the nonmoving party, show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 127-28 (2005). Although an order denying a motion for summary judgment is not final and appealable, an exception exists if the parties filed opposing motions and the trial court grants one motion but denies the other. *Illinois State Chamber of Commerce v. Filan*, 216 Ill. 2d 653, 677 (2005). Furthermore, where the parties file cross-motions for summary judgment, they agree that no genuine issues of material fact exist

and that the dispute involves only questions of law. *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755 (2005). We review the trial court's determination on motions for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). In our review, we may affirm on any basis supported in the record regardless of whether the trial court relied on that basis or whether its reasoning was correct. *Illinois State Bar Ass'n Mutual Insurance Co. v. Coregis Insurance Co.*, 355 Ill. App. 3d 156, 163 (2004).

¶ 14 Chicago Title argues that the trial court erred in denying its motion for summary judgment on their complaint against Bass because the Baczeks properly assigned their rights to Chicago Title, and Bass breached the warranty of title he gave the Baczeks when he conveyed the property to them. The agreement executed between Chicago Title and the Baczeks provided that Chicago Title "shall be subrogated to the Insureds" for claims against Bass, and that the Baczeks "agree to assign their rights and claims against [Bass]" to Chicago Title. Whether Chicago Title claims a right of subrogation, or a right pursuant to an assignment, it must stand in the shoes of the Baczeks and can only enforce those rights they could enforce. *Dix Mutual Insurance Co. v. LaFramboise*, 149 Ill. 2d 314, 319 (1992); *YPI 180 N. LaSalle Owner, LLC v. 180 N. LaSalle II, LLC*, 403 Ill. App. 3d 1, 5 (2010). Therefore, Chicago Title can assert its rights against Bass only if the Baczeks could maintain a cause of action against Bass regarding the transfer of the property to them via the warranty deed. See *Dix*, 149 Ill. 2d at 319.

¶ 15 In the underlying proceedings, Patricia challenged the Baczeks' title to the property through a section 2-1401 petition. Section 22-45 of the Property Tax Code (35 ILCS 200/1-1 *et seq*. (West 2006)) (Tax Code) provides that once the trial court issues a tax deed pursuant to the Tax Code, a party cannot contest the order except by direct appeal or by a section 2-1401

petition.   35 ILCS 200/22-45 (West 2006).   The Tax Code provides for four grounds upon which relief may be granted through a section 2-1401 petition: (1) the taxes were paid prior to the sale; (2) the property was exempt from taxation; (3) the tax deed had been procured by fraud or deception; and (4) a party holding a recorded interest in the property was not given proper notice of the tax deed litigation.   35 ILCS 200/22-45 (West 2006).

¶ 16    However, the trial court is without authority to vacate the tax deed order through a section 2-1401 petition if there exists a *bona fide* purchaser for value of the property.   *In re Application of the Cook County Collector For Judgment and Sale Against Lands and Lots Returned Delinquent For Nonpayment of General Taxes for the Year 1985, and Petition for Tax Deed of Leslie C. Barnard*, 228 Ill. App. 3d 719, 734 (1991) (hereinafter *Elsie Bee*); 735 ILCS 5/2-1401(e) (West 2006).   "A purchaser is not a *bona fide* purchaser if he had constructive notice of an outstanding title or right in another person."   *Elsie Bee*, 228 Ill. App. 3d at 734. Furthermore, "[i]f tax deed grantees had notice of the owners' claim to the property, then they stand in no better position than the tax purchaser and are subject to relief against them."   *Id*. at 735.

¶ 17    The trial court below granted Patricia's petition, vacating the issuance of the tax deed to Bass and revesting the property to Patricia.   It clearly determined that the Baczeks were not *bona fide* purchasers of the property.   The record on appeal, however, does not contain the pleadings in the underlying proceedings, other than Patricia's section 2-1401 petition to vacate, or the transcripts.   Without this material, we cannot know the arguments presented at the proceedings or the trial court's reasoning when it made its determination.   In this circumstance,

we must presume that the trial court acted in conformity with the law and had a sufficient factual basis for its determination.   *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

¶ 18    The issue is whether the Baczeks now have a claim against Bass for breach of the warranty deed where the trial court determined that they were not *bona fide* purchasers under section 2-1401 and they lost the property Bass conveyed to them.   A warranty deed stipulates that the grantor guarantees good title to the property and that his possession is undisturbed. *Midfirst Bank v. Abney*, 365 Ill. App. 3d 636, 644 (2006).   In an action for breach of warranty, the purchaser must prove that the grantor gave the warranty as an inducement to make the purchase, and the purchaser actually relied upon that warranty.   *Regopoulos v. Waukegan Partnership*, 240 Ill. App. 3d 668, 674 (1992).   The purchaser need not show, however, that the reliance was reasonable.   *Id*.

¶ 19    Given the facts in the record, the Baczeks cannot show that Bass offered the warranty as an inducement for them to purchase the property or that they relied on the warranty.   Bass did not induce the Baczeks to purchase the property.   Instead, it was the Baczeks who approached Bass about the possibility of obtaining the property through the tax deed litigation.   The parties entered into an oral agreement in which the Baczeks agreed to purchase the property for $65,000. Pursuant to the agreement, Property Group filed its motion to expunge the property's tax redemption and to vacate the order dismissing its petition for a tax deed.   The Baczeks and Bass agreed to this transaction so that the Baczeks could obtain property they had been trying to obtain since 2004.   Since Bass did not use the warranty to induce the Baczeks to purchase the property, the Baczeks cannot maintain an action against Bass for breach of the warranty. Therefore, Chicago Title cannot file a claim against Bass because, as subrogee and assignee of

the Baczeks' rights, it must stand in the shoes of the Baczeks and can only enforce those rights they could enforce. *Dix*, 149 Ill. 2d at 319; *YPI 180 N. LaSalle Owner*, 403 Ill. App. 3d at 5.

¶ 20 Chicago Title argues that the Baczeks should be able to recover against Bass based on the warranty deed, and it cites *Midfirst Bank* as support. In *Midfirst Bank*, the Second District found that when a purchaser receives a covenant of good title through a warranty deed, "the law should allow him to enforce its performance and recover damages for its breach" regardless of the purchaser's actual knowledge of an encumbrance. *Midfirst Bank*, 365 Ill. App. 3d at 644. However, although the purchaser in *Midfirst Bank* had knowledge of an outstanding interest in the property at the time of purchase, he stated that the seller assured him that the outstanding mortgage would be satisfied and the purchaser relied on that oral representation. *Id*. at 643. In other words, the seller used the warranty to induce the purchaser to buy the property and the purchaser relied on the warranty. *Midfirst Bank* supports our determination here.

¶ 21 Alternatively, Chicago Title argues that the Baczeks have a claim against Bass for unjust enrichment because Bass retained $65,000 in proceeds from the sale although the tax deed was subsequently declared void. Unjust enrichment is an equitable remedy and does not apply "[w]here there is a specific contract that governs the relationship of the parties." *Nesby v. Country Mutual Insurance Co.*, 346 Ill. App. 3d 564, 567 (2004). Although a party may plead unjust enrichment in the alternative, it may not include allegations of an express contract in its counts for unjust enrichment. *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604 (2005). A warranty deed is a contract. *Bormann v. Simpson*, 45 Ill. App. 3d 176, 179 (1977).

¶ 22 In count I of its first amended complaint, Chicago Title alleges breach of warranty and states that Bass conveyed the property to the Baczeks via warranty deed in which he warranted "the quiet and peaceable possession of such premises." In count II alleging unjust enrichment,

Chicago Title argues that when Bass conveyed the property to the Baczeks, he received $65,000 as proceeds which he retained even though his tax deed for the property was later declared void by the trial court. Although Chicago Title does not specifically reference the warranty deed in its unjust enrichment count, it does incorporate the first 10 paragraphs of count I which contain references to the warranty deed. Chicago Title also attached the warranty deed to the complaint. See *Guinn*, 361 Ill. App. 3d at 604-05 (dismissal of plaintiff's unjust enrichment count proper where it incorporated allegations of a valid agreement into that count and also attached a copy of the relevant contract to the complaint). The theory of unjust enrichment is not applicable in this case.

¶ 23    Due to our disposition of this case, we need not address Bass's arguments that Chicago Title had no contractual right of subrogation because the Baczeks' loss was expressly excluded from coverage by the policy, and that the attorneys fees Chicago Title seeks as damages are not recoverable as a subrogated claim.

¶ 24    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 25    Affirmed.

CHICAGO TITLE INSURANCE COMPANY,
Individually and as Subrogee for William Baczek,
Jan W. Baczek, and Andrea M. Baczek,

Plaintiff-Appellant,

v.

BENJAMIN J. BASS, Individually and d/b/a
Property Group,

Defendant-Appellee.

No. 1-14-0948

Appellate Court of Illinois
First District, First Division

April 27, 2015

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Cunningham and Connors concurred in the judgment and opinion.

Appeal from the Circuit Court of Cook County.

The Honorable Sanjay Tailor, Judge Presiding.

Kindwald Law Offices, P.C., 105 West Madison Street, Suite 1800, Chicago, IL
60602, (Donald J. Kindwald, of counsel), for APPELLANT.

Reiter Law Offices, Ltd., 30 South Wacker Drive, Suite 1710, Chicago, IL 60606,
(Gregory M. Reiter and Lynnette E. Lockwitz, of counsel), for APPELLEE.